MAT MOOTRY AND ALBERT ROLLY V. THE STATE.

35 450
135 501

*No. 866. Decided January 15th, 1896.*

*Motion for Rehearing Decided February 13th, 1896.*

**1. Murder—Charge Upon Express Malice as to Joint Defendants.**

On a trial of two joint defendants for murder, the charge upon express malice, which is otherwise correct, is sufficient if, when instructing the jury as to the circumstances which would authorize them to find defendants guilty upon express malice of murder in the first degree, it requires them to find that both defendants were actuated by such express malice.

**2. Bill of Exceptions—Certificate to by the Judge.**

A bill of exceptions, relating to evidence upon any given point in issue at the trial, should not only contain the testimony on the point, but, should show in itself that it covered all the testimony on the issue. And the certificate of the trial judge to a bill of exceptions which merely recites the objections as they were urged by defendant, and does not purport to set out the evidence itself, only certifies the grounds of the objection, and not that the grounds were true, or that the facts stated were proved.

**3. Charge of Court Where There is no Statement of Facts.**

Without a statement of facts, the court, on appeal, cannot say, that a paragraph of the court's charge was calculated to impair or injure the rights of the defendant.

**4. Murder in the First Degree—Verdict as to Joint Defendants.**

On a trial of two joint defendants for murder, the verdict was, "We the jury find the defendants, Mat Mootry and Albert Rolly, guilty of murder in the first degree, as charged in the indictment, and assess their punishment at death." Held: No uncertainty as to a finding of the guilt of both defendants, nor as to the degree of

murder of which they were found guilty; and the words, "assess their punishment at death," do not import a joint verdict, which would be satisfied by the death of either defendant; but, a proper construction thereof is inconsistent with any other reasonable construction than the assessing the punishment of each at death. "Their punishment," in common parlance, means the death of each.

ON MOTION FOR REHEARING.

**5. Murder—Manslaughter—Charge.**

On a trial for murder, where it appears, from a bill of exceptions, that defendants went to the place of killing for the purpose of whipping the deceased and his brother, and, in resistance thereto, deceased, in order to prevent the whipping, used his gun, and it then became necessary for defendants to use more force than they intended; that is, they had to kill deceased in order to carry out their original purpose, the homicide would be without adequate cause, and constitute at least murder in the second degree, and not manslaughter, and it was not error for the court to instruct the jury to find murder in the second degree upon such a state of case.

**6. Same—Charge—Harmless Error.**

If it be conceded that upon the facts stated in paragraph 5, supra, that the court erred in charging that such a homicide would be murder in the second degree and not manslaughter, the error is harmless, and could not have injured defendants in view of the fact that the jury found them guilty of murder in the first degree.

APPEAL from the District Court of Williamson. Tried below before Hon. R. E. BROOKS.

The appellants were jointly indicted for murder of one Andrew Prikryl, in Williamson County, by shooting him with a pistol and gun on the 8th day of May, 1895. They were jointly tried, and the verdict and judgment convicted them of murder in the first degree, with the punishment of each assessed at death. The verdict of the jury was: "We, the jury, find the defendants, Mat Mootry and Albert Rolly, guilty of murder in the first degree, as charged in the indictment, and assess their punishment at death."

There is no statement of facts in the record. The twenty-second paragraph of the charge of the court was as follows: "But, if said defendants, Mat Mootry and Albert Rolly, sought out and went to where said Tom Prikryl and Andrew Prikryl were, at the time of the killing of the said Andrew Prikryl, if such facts you find, without any purpose of killing said Andrew or Tom Prikryl, but only with the intention or purpose of committing an assault upon the said Tom or Andrew Prikryl, and the said Andrew Prikryl, in resisting such threatened assault, if any, made or attempted to make an assault upon said defendants, or either of them, and that it reasonably appeared to the defendants or either of them, viewed from their standpoint, that from the character of said threatened assault, if any, by said Andrew Prikryl, that they or either of them were in danger of their lives, or serious bodily injury from such threatened assault, and that it became necessary to kill said Andrew Prikryl in order to prevent such threatened injury to said defendants, or either of them, then such killing would not be justifiable, nor murder in the first degree, but would be murder in the second degree, and if you find from the evidence, beyond a reasonable doubt, the facts to be as above stated, then you will find the defendants guilty of murder in the second degree,

and assess their punishment at confinement in the penitentiary for any term of years, not less than five."

To this paragraph of the charge, the defendants filed a bill of exceptions, as follows: (2) The court erred in the twenty-second paragraph of its charge to the jury in instructing them that, under the facts as stated by the court, that they could find the defendants guilty of murder in the second degree as there was evidence tending to show that the defendants went to the place where Andrew and Tom Prikryl were, not with the intention of killing them, or either of them, but for the purpose of giving them a whipping, and that from the act of Andrew Prikryl in attempting to use his gun upon the defendants and to take their lives, it became necessary for the defendants to use more force than was first intended by them in engaging in the difficulty.

*Makemson & Fisher*, for appellants.—There are but two questions presented by the record.

1.  The insufficiency in law to support the judgment; the verdict being a joint and not a several one. Medis et al. v. State, 27 Tex. Crim. App., 195; Whitcomb v. State, 30 Tex. Crim. App., 269; Caesar v. State, 30 Tex. Crim. App., 274; Hays v. State, 30 Tex. Crim. App., 473.

2.  The twenty-second paragraph of the court's charge is erroneous upon the question of defendant's imperfect right of self-defense. [See twenty-second paragraph of the court's charge, and bill of exceptions reserved thereto, set out in full in the statement of the case above.—Reporter.] We respectfully submit that upon the facts stated in the bill of exceptions the case would be only one of manslaughter. At all events, the court, in its charge, cannot declare a killing upon such state of facts to be murder in the second degree. It could be of no higher offense than murder in the second degree and it might be manslaughter, and would be in the absence of malice. Under the facts detailed in the court's charge and certified to in the bill of exceptions, the court ought to have submitted the question of manslaughter to the jury. King v. State, 13 Tex. Crim. App., 282; Cartwright v. State, 14 Tex. Crim. App., 486; Jones v. State, 17 Tex. Crim. App., 611.

*Mann Trice*, Assistant Attorney-General, for the State.—There is no set form of words in which a verdict is required to be rendered, and therefore the only rational general rule that can be adopted by which to measure its sufficiency, is, does it show clearly and without any doubt the intention of the jury and their finding on the issues presented to them? If it does, it cannot be declared bad without sacrificing substance and justice to form. State v. Ryan, 13 Minn., 374; Senterfit v. State, 41 Texas, 186; Buster v. State, 42 Texas, 315.

In construing a verdict the object is to arrive at the meaning of the jury. Chester v. State, 1 Tex. Crim. App., 702.

Verdicts should receive a reasonable construction, and are not to be avoided unless there is substantial doubt of their import. Bland v.

State, 4 Tex. Crim. App., 15; Williams v. State, 5 Tex. Crim. App., 26, and McMillan v. State, 7 Tex. Crim. App., 100.

Again, "technical objections are to be disregarded, and the verdict held good if a judgment upon it would bar another prosecution." Lindsay v. State, 1 Tex. Crim. App., 327.

The gist of appellant's contention is, that the verdict should have said: "We, the jury, find each of the defendants guilty, and assess the punishment of each at death." Does not the use of the plural pronoun "their," in the verdict in this case, sufficiently designate each defendant, and indicate the penalty to be imposed on each? I take it that this language, *ex vi termini*, implies that each of the defendants named were found guilty, and the punishment of each assessed at death. (See Bishop's New Criminal Procedure, § 1036). This, to my mind, is the plain import of the language used, and to conclude otherwise, would, as said in Kellum v. State, 64 Miss., 222, "require a degree of felicity in the art of doubting and of technical gymnastics which we do not possess."

This verdict is certain; the jury found both defendants guilty; they found the offense of which they were guilty; they found the penalty as follows: "And assess their punishment at death."

As said by Chief Justice Robertson, 7 Marsh, 341, "the judge who would not enter judgment on such a verdict would scarcely, if ever, find a jury able to write a verdict in language so explicit, technical or exact, as to suit the fastidiousness of his judicial taste, or conquer the skepticism of his learned head."

The authorities relied on by appellants cannot be decisive of the validity of this verdict, for the obvious reason that in all the cases cited by them, the punishment assessed was divisible. To illustrate: "We, the jury, find the defendants guilty and assess the punishment at death." This verdict, of course, was held bad, because of its uncertainty. The penalty in these cases being either a fine or a term of years in the penitentiary. The penalty assessed in the case at bar is indivisible. The execution of one would not satisfy the judgment. Both parties are identified by the verdict, and their punishment assessed by the verdict, and nothing save and except the execution of both would satisfy it.

2. The bill of exceptions to the charge of the court is too meager to be considered, especially in the absence of the statement of facts or a statement in the bill of exceptions containing all that transpired at the immediate time of the killing. The bill fails to show the attitude of the parties at the time of the killing. For the sake of argument, it may be conceded that the proof showed that appellants, when they started to the scene of the killing, said they had no intention to take the life of deceased, nor to do him any serious bodily injury. They simply intended to give him a whipping, and further, that no injury was even intended by the whipping. This would not be conclusive as to their intention in provoking the difficulty, but in order to determine their intention, the facts occurring at the very time of the homicide should be shown, either by a statement of facts accompanying the record, or by a

bill of exceptions which presents this point. For aught that we know, when the deceased tried to use his gun, if he did so, the appellants may, at that very time, have been making such a deadly assault upon the deceased as to preclude them from invoking the doctrine of imperfect self-defense. The court submitted this issue to the jury, and left it open for them to find a verdict for murder in the second degree on the theory of imperfect self-defense, and in addition submitted the special charge asked by appellant on this subject; but, notwithstanding, the jury found a verdict of murder in the second degree, and assessed the death penalty. This is certainly persuasive as going to show that there were no facts in evidence that raised the issue of imperfect self-defense. As to whether this defense could avail, appellants depended on the nature and character of the assault upon deceased at the very time of the homicide. If it was an assault calculated to result in death or serious bodily injury to the deceased, then whatever efforts the deceased may have attempted to have used in his defense would have been permissible, and the doctrine of self-defense would not have accrued to appellants.

HENDERSON, JUDGE.—The appellants in this case were tried under an indictment charging them with murder; were convicted of murder in the first degree, and their punishment assessed at death; and from the judgment of the lower court they prosecute this appeal. There is no statement of facts in the record in this case, but appellants rely exclusively on the bills of exception taken by them to the charge of the court, and to the verdict of the jury, as returned by the jury. The appellants, in the first bill of exception, insist that the court erred in its charge to the jury, in that, as suggested in said bill of exception, said charge of the court makes the appellants' guilt of murder in the first degree depend upon express malice entertained by one of said defendants. We have examined the charge in that respect, and we do not so regard it. In each of the charges where the court charges as to the circumstances which authorized the jury to find the defendants guilty, upon express malice, of murder in the first degree, it requires them to find that both were actuated by express malice, before they could find them guilty. In charge No. 24, in charging on the question of principals, the court requires the jury to find "that both were present, and acting together with the same intent, at the time of the murder, before they could find both guilty." In charge No. 25, the jury were further instructed "they might find one guilty, and not the other; that the guilt of each depended upon his own participation in the offense charged." The evidence not being before us, we are not informed as to the respective acts of the appellants, nor what part in the homicide was executed by one or the other, but the charges in question are such as might properly have been given upon a state of facts provable under the indictment.

The appellants urge that the court erred in the twenty-second paragraph of its charge to the jury, in instructing them, after the facts stated by the court, "that they could find the defendants guilty of mur-

der in the second degree, as there was evidence tending to show that the defendants went to the place where Andrew and Tom Prikryl were, not with the intention of killing them, or either of them, but for the purpose of giving them a whipping, and that from the act of Andrew Prikryl, in attempting to use his gun upon the defendants, and to take their lives, it became necessary for the defendants to use more force than was first intended by them, in engaging in the difficulty." It will be noted that this bill of exception, at its inception, states, "that after the facts as stated by the court," etc, and then, concluding, states, "as there was evidence tending to show," etc. We have examined the record carefully to ascertain whether or not, outside of this bill itself, there was any certificate of the judge as to any such facts proven on the trial of the case, and we have failed to find such a certificate. So that we take it that the contention of the appellants is that the bill in question makes the judge certify that a state of facts was proven on the trial of the case to the effect "that the defendants went to the place where Andrew and Tom Prikryl were, not with the intention of killing them, or either of them, but for the purpose of giving them a whipping, and that from the act of Andrew Prikryl, in attempting to use his gun upon the defendants, and to take their lives, it became necessary for the defendants to use more force than was first intended by them, in engaging in the difficulty; that, on such a state of case, the court instructed the jury to find the defendants guilty of murder of the second degree." We do not understand the bill of exceptions to convey that idea. We understand that the bill of exceptions shows that the court gave paragraph 22 in charge to the jury, and that appellants claim that the court gave said paragraph in charge to the jury, on the ground that there was such evidence as above quoted. In other words, the bill does not certify that such facts were in proof by appellants, but that appellants, as their ground of exception, claim that such facts were proven. We do not construe the bill in question as a certificate of the judge that such a state of facts was proven; much less, that they were all the facts proven in that connection. There might have been evidence tending to prove such a state of facts, and yet in that same connection there might have been other evidence showing that notwithstanding the parties went to the place of the homicide with such purpose, expecting that the deceased would take the whipping or beating which they intended to give him, but further with the purpose on their part that, if he did not submit to it, they would cause him to submit to the same, else kill him. This would at least have made the homicide murder in the second degree. The bill should not only contain the testimony on the point, but should show in itself that it covered all the testimony elicited on the issue in question. The bill in this case only certifies as to the grounds of appellants' objection, and not that the grounds were true, or the facts were proved. See Smith v. State, 4 Tex. Crim. App., 626; Hennessy v. State, 23 Tex. Crim. App., 340; Ezzell v. State, 29 Tex. Crim. App., 521; Cline v. State, 34 Tex. Crim. Rep., 347. There being no statement of facts in the record, the charge in

question may have been more liberal towards the defendants than the evidence justified; and though it be conceded that said paragraph 22, as an abstract proposition, does not announce the law, yet, not having the facts before us, we cannot say that it was calculated to impair or injure the rights of the appellants.

The appellants in this case insist that the case should be reversed because the verdict of the jury is a joint verdict. Said verdict is in the following form: "We, the jury, find the defendants, Mat Mootry and Albert Rolly, guilty of murder in the first degree, as charged in the indictment, and assess their punishment at death." There is no uncertainty in this verdict, as to the fact that the jury found both defendants guilty, nor is there any uncertainty as to the degree of murder of which they found them guilty; but it is contended that the clause, "and assess their punishment at death," is a joint verdict, as to their punishment, and that the infliction of the death of either would satisfy the verdict. To support this view, the appellants cite a number of decisions of this court. We have examined the cases on this subject, beginning with Flynn v. State, 8 Tex. Crim. App., 398, and concluding with the cases cited by appellants in Whitcomb v. State, 30 Tex. Crim. App., 269. A number of these cases were misdemeanors, in which the punishment was a fine, and the verdict imposed this fine jointly against both defendants. In the Flynn case the two defendants were tried jointly, and the jury, by their verdict, assessed the punishment at a fine of $250 and six months' imprisonment in the county jail. The court in that case says: "When several are joined in one indictment, a joint award of one fine against them all is erroneous, for it should be several against each defendant; for otherwise one who has paid his proportionable part might be continued in prison until the other have all paid theirs which would be, in effect, to punish one for the offense of another." And this seems to be followed in other misdemeanor cases where the question has arisen. See Matlock v. State, 25 Tex. Crim. App., 716; Cunningham v. State, 26 Tex. Crim. App., 83. In Medis v. State, 27 Tex. Crim. App., 194, appellants were jointly tried for sodomy. The verdict of the jury, as returned, was as follows: "We, the jury, find Charles Medis and Ed Hill guilty, as charged, of sodomy, and assess the punishment at ten years' confinement in the penitentiary." This case was reversed (citing the cases previously mentioned) on the ground that the verdict was joint, and not several. This case was followed in Caesar v. State, 30 Tex. Crim. App., 274. The form of the verdict in said case was: "We, the jury, find the defendants guilty as charged, and assess their punishment at three years' confinement in the penitentiary." This case was also reversed, on the authority of the foregoing cases. In Hays v. State, 30 Tex. Crim. App., 472, Hays and Trent were jointly tried for burglary, and found guilty by the jury. The verdict was in the following language: "We, the jury, find the defendants guilty of burglary, as charged in the indictment, and assess their punishment at four years in the penitentiary." This case was also reversed, because

the verdict was joint, and not several, following the preceding cases. Conceding that the aforesaid cases were decided correctly, and that the verdicts could only be construed as joint verdicts, and not several, upon which hypothesis the court seemed to have viewed said verdicts, yet, in our opinion, the case at bar is distinguishable from either of said cases, as to the verdict and the question here involved. The jury in this case, in assessing the punishment of the defendants, uses the plural, "their punishment," and this they fix at death; that is, as we understand it, in common parlance, the death of each, or "their death." The very terms of the verdict make this certain. The nature of the punishment in some of the other cases mentioned was such as to leave it questionable whether the verdict was intended to be divisible, or an entirety, as to each defendant, but not so in the present case. We think the rule of "*id certum est quod certum reddi potest*," should be held applicable in the construction of even as important a matter as the verdict of a jury. Mr. Bishop says, in this regard: "If the verdict is guilty against all, it should be in terms which could be construed as several; and it will be, for example, if it finds each guilty, by name." See Bishop Crim. Proc., § 1036. And in Minnessota it is held that: "There is no set form or words in which a verdict is required to be written. Therefore the only rational general rule that can be adopted by which to measure its sufficiency is, does it show clearly, and without any doubt, the intention of the jury, and their finding on the issues presented to them? If it does, it cannot be declared bad without sacrificing substance and justice to form. No error that is not a violation of some positive rule of law, which may possibly prejudice the defendant, can be a ground for reversal on appeal." See State v. Ryan, 13 Minn., 370 (Gil. 343). No one on reading said verdict, would question for a moment that the jury intended thereby to assess the punishment of each of said defendants at death, and the language used, to our minds, imports that idea, and is inconsistent with any other reasonable construction; and, entertaining that view, we hold the verdict good, as finding each of the defendants guilty of murder in the first degree, and assessing the punishment of each at death. There being no errors in the record sufficient to authorize a reversal of this case, the judgment of the lower court is affirmed as to each of said defendants.

*Affirmed.*

---

ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—This case was decided at a previous day of this term, and the judgment of the lower court affirmed, and it now comes before us on a motion for rehearing by appellants. If it be conceded, as claimed by appellants, that the court (in the bill of exception taken) certifies, "That there was evidence tending to show that the defendants went to the place where Andrew and Tom Prikryl were, not with the intention of killing them, or either of them, but for the pur-

pose of giving them a whipping, and that from the act of Andrew Pri-
kryl, in attempting to use his gun upon the defendants, and take their
lives, it became necessary for the defendants to use more force than was
first intended by them in engaging in the difficulty," we cannot concede
that it follows, as a necessary conclusion, as insisted by appellants, that
the killing was upon adequate cause, and so the homicide was man-
slaughter.    It will be noted that the act of the defendant which caused
Prikryl to use his gun in resistance is not stated.    From the bill as
stated, it appears that the defendants were carrying out their purpose to
give the Prikryls a whipping, and, in resistance thereto, Andrew Prikryl,
to prevent the same, used his gun, and that then it became necessary for
the defendants to use more force than was first intended; that is, to kill
the Prikryls, in order to carry out their original purpose.    Such a kill-
ing would appear to be without any adequate cause; and so, if the kill-
ing was upon passion and excitement, it would at least be murder in the
second degree.    The bill, even according to the contention of the appel-
lants, does not show any provocation on the part of the Prikryls.    But
for aught that appears, the appellants, in carrying out their original pur-
pose to give the Prikryls a whipping, made it necessary for the Prikryls,
in order to prevent the same, to act upon the defensive, and use a gun;
and if, then, in order to carry out the common purpose, to kill the
Prikryls, in order to accomplish the whipping, the appellants committed
the homicide, the case would undoubtedly be one of murder.    But, as
heretofore stated in the original opinion, this bill of exception is not a
certificate that these facts were in evidence, much less that they were all
of the facts upon the issue in question.    Moreover, concede that the
court below made a mistake in presenting this issue to the jury, upon
the facts stated, as murder in the second degree instead of manslaughter,
which is contended by the appellants should have been given; then it
is a sufficient answer to this proposition to say that the appellants in this
case were not convicted of murder in the second degree, but the verdict
was for murder in the first degree.    So, it appears that the jury did not
credit the facts which presented the theory of murder in the second
degree.    If they had found a verdict of murder in the second degree,
then there might be some plausibility in the contention of the appellants
in this case; but, as the question presents itself to us now, the charge of
the court could not possibly have injured the rights of the appellants,
inasmuch as it was not calculated to influence the jury to find appellants
guilty of murder of the first degree.    The motion for rehearing is over-
ruled.

*Motion for Rehearing Overruled.*