Battle, J.
 

 We
 
 have examined the alleged error assigned by the prisoner’s counsel in his bill of exceptions, with that care which the importance of the result to the prisoner demands, without being able to discover in them any thing which can entitle him to another trial. ¥e will notice the exceptions, in the order in which the counsel has argued them.
 

 1st. The first is that, the presiding Judge erred in the remarks which he made to the jury in relation to the testimony of the witness Thompson. The counsel contends that these remarks were in violation of the act of 1796, (see Eev. Code, ch. SI, sec. 130,) because they were calculated to give undue:
 
 *228
 
 weight to the testimony of that witness, and had thus invaded the province of the jury in passing upon his credibility. In support of his position, the counsel relies upon the cases of the
 
 State
 
 v.
 
 Shule,
 
 10 Ire. R. 153, and
 
 Nash
 
 v. Morton, 3 Jones’ Rep. 3. In the first of these cases it was held that the Court had no right to lead the jury to a verdict, by an intimation that the testimony was sufficient to support it; and in the other, it was decided that a Judge had no right, by speaking in strong and ‘emphatic language, to give additional force to the positions of one of the counsel, and afterwards to tell the jury that it was a plain case, and if they did not agree, he would detain them until the close of the Court. These were palpable violations of the spirit of the act, but we do not think that they furnish any authority for impeaching the charge of the Judge in the present case. The witness Thompson had stated that he believed that certain tracks which he had seen near the house, where the burglary was committed, were those of the prisoner. This testimony was called out by the solicitor for the State without any objection from the opposite counsel, who, however, immediately asked the witness whether he had over measured the foot, or the shoe of the prisoner, or had ever had him in his employment, or had ever seen him before his arrest; to each of which questions the witness answered, that he had not. The solicitor then requested the witness to stato the reasons that induced him to think that the tracks were those of the prisoner, to which the prisoner’s counsel objected, and the Court sustained the objection, but said that the latter might call for the reasons upon which the opinion of the witness was founded, which, however, was declined. In their argument to the jury, upon this part of the case, the counsel for the prisoner sought to weaken the force of this testimony, by remarking that, though the witness had asserted, with great confidence, that the tracks were the prisoner’s, yet he could not assign a single reason for it. It was in noticing this argument that the Judge called the attention of the. jury to the fact, that he had given permission to the prisoner’s counsel to call for the reasons of the witness’ belief,
 
 *229
 
 and they declined to do so. This, the Judge-said he did in justice to Mr. Thompson.
 
 We
 
 are clearly -of opinion that the Judge acted right, and that, under the circumstances of the case, it was his duty to make the remark which he did. Thompson’s opinion about the identity of the tracks which he saw, with those of the prisoner, was, in truth, inadmissible, unless shown to be founded on sufficient reasons, and if objected to-, ought to have been rejected. But being admitted without objection, the solicitor had the right to call for the grounds of the witness’s belief, and the Judge erred in not permitting him to do so. The prisoner’s counsel had no right to -complain of it, as it was done upon their objection, nor had they any just cause to complain that the Judge gave them the option to examine the witness, themselves, upon the point in question. The witness himself had the best reason to complain, because he was placed in a false position by the error into which the Judge, at the instance of the prisoner’s counsel, had fallen. Surely, then, it was not only the right, but the duty of the Judge, to save the witness from the injurious comments of the counsel, by calling the attention of the jury to the fact, which had occurred in open Court, in the progress of the trial. This was done not for the purpose of giving undue weight to the testimony of the witness, but to ensure a fair and impartial consideration of it by the jury. In doing this, his Honor was fully supported by tho case of
 
 Bailey
 
 v.
 
 Pool,
 
 13 Ire. R. 404, to which we were referred by the counsel for the State. That case states that “ in commenting on the defense, his Honor called the attention of the jury to the different circumstances relied upon in the defense, among which was tiie pressure of Pritchard’s arm ; that they might in connection with it consider the question put and withdrawn by the plaintiff’s counsel.” This Court decided that there was no error in so doing, because the putting a question and withdrawing it by the counsel was a fact, transpiring in the course of the trial, brought before the jury by one of the parties, and in relation to the question under investigation. As in
 
 Bailey
 
 v.
 
 Pool,
 
 so in t-he present ease, the jury were at liberty to take
 
 *230
 
 into their consideration what had occurred before them relative t’o the examination of the witness, and if they could legally do so, the Court, in charging them, had a right to call their attention to it.
 

 2. The second exception is, that the Court would not permit the prisoner’s counsel to read1 to the jury the statement of this case as reported in 4th Jones’ Rep. 349, on the application for a new trial by the prisoner after a former conviction. The bill of exceptions states that “ during the argument of tlie cause, one of the defendant’s counsel commenced reading; the facts in the same case as reported in the Supreme Court, and was contrasting the testimony therein of the witnesses, Smallwood and Yanghn, with their testimony on this trial,”" when, on the objection of the solicitor for the State, he was-stopped by the presiding Judge, who remarked,
 
 “
 
 that he could not allow him to proceed in that manner, that while the Court conceded to the counsel the right to read to the-jury any principle of law laid down by the Supreme Court, still he had not the right to read the facts there stated, for the purpose of contrasting them with the facts now deposed to by the witnesses. The counsel insisted upon his right to read the whole case to the jury, but submitted to the opinion of the Court.”
 

 In his argument before us, the counsel insists that his sole purpose was to read the case for the purpose of commenting to the jury, upon the law therein stated, as by the act of 1844, (see Rev. C., ch. 31, sec. 57,. cl. 15) he had a right to do. Erom the facts set forth in the bill of exceptions, we are bound to understand otherwise, and' that Ms object, in contrasting the testimony of the witnesses, as reported, with that given on the trial, was to discredit the witnesses before the jury. So understanding it, we are bound to say that the course of the counsel was wrong, and it was the duty of the Judge to stop him. The facts as stated in the published reports were not in evidence before the jury at all, and the counsel had no right to refer to them for the purpose of impeaching the testimony of the witnesses as sworn to on the trial. The case of
 
 *231
 
 the
 
 State
 
 v. Oneal, 7 Ire. Rep. 251, cited by the counsel for the State, shows that if counsel, in their argument, state as facts what has not been proved, the Court, may, in its discretion, correct the mistake at the moment, or in the charge to the jury.
 

 8. The third and last exception insisted on in the argument before ns, has reference to the course pursued by the Judge in relation to the examination of the witness Yaughn. It appears from the bill of exceptions, that after this witness had been examined by the State, and cross-examined by the prisoner’s counsel, the latter stated that they might wish to examine him upon another point, at a subsequent stage of the trial, and asked permission of the Court that they might recall him as a State’s witness if they should find it necesssary to do so. The solicitor objected to this, and asked the counsel to state for what purpose they wished to recall the witness, which they declined to do ; but the Court, nevertheless, gave the permission desired. Afterwards, the solicitor for the State introduced a witness, named Jordan, to prove that the prisoner was the property of him who was alleged in the bill of indictment to be the owner. The counsel for the prisoner then, in cross-examination, proposed to ask Jordan what the witness Yaughn bad, at a former time, told him about the confessions of the prisoner. This was objected to, because the preliminary question had not been put to Yaughn, and the objection was sustained by the Court. The counsel then proposed to recall Yauglm, under the permission already given, for the purpose of asking the preliminary question according to the decision in
 
 Edwards
 
 v. Sullivan, 8 Ire. Rep. 307. The solicitor again objected on the part of the State, and assigned as a reason that the prisoner’s counsel knew before that he intended to introduce the witness Jordan, (who was a brother-in-law of the owner of the prisoner,) and the counsel concealed the purpose for which he asked the privilege of recalling Yaughn with a view to get the benefit of Jordan’s contradiction of Yaughn, and at the same time, prevent him from being at liberty to impeach Jordan; and further, that
 
 *232
 
 they might still retain the right to conclude the argument to the jury. The case states, that all this “ was admitted by the defendant’s counsel,” and thereupon, the Judge withdrew the permission to recall Vaughn, unless they would introduce him as their witness ; which the counsel declined to do.
 

 After much reflection, we cannot discover any error in the conduct of the Judge, of which the prisoner’s counsel have the right to complain. Pc is the duty of the Judge, who presides at a trial, to see that it is properly conducted, so that neither party shall take undue advantage of the other, either in the examination of the witnesses, or in the arrangement of the argument. To accomplish this object, the Judge must necessarily be entrusted with some discretionary power, as he undoubtedly is, in many cases; a well established instance of which is in the discretion given him to permit a witness, once examined, to be called again at any time before the verdict is rendered. See
 
 State
 
 v. Noblett, 2 Jones’ Rep. 418, and the cases therein referred to. In the present case, the counsel for the prisoner, wished to secure the real or supposed advantage of having the concluding argument to the jury. This was a legitimate advantage, if it could be properly obtained. When asked by the solicitor to state the purpose for which they wished permission to recall Vaughn as a State’s witness at a subsequent stage of the trial, candor required them to disclose it, or to withdraw their application to the Court. IPad they made it known, the solicitor might possibly have called another witness instead of Jordan to prove tlie fact of ownership. If they had withdrawn their application, then the solicitor would have had no right to enquire as to tho manner in which, in that particular, they intended to conduct their defense. What this Court said in the
 
 State v.
 
 David, 4 Jones’ Rep. 353, has, wo think, a strong bearing upon the present exception. The question was, whether the counsel for the prisoner, who, because of his not having introduced any testimony, was entitled to make the concluding argument, was hound to open the case and state the ground of his defense. This Court decided that he was, and added, “ common fair
 
 *233
 
 ness suggests that this is the proper course, otherwise the State would be taken wholly at.a disadvantage, and the prisoner’s counsel might suggest views of the case,, and draw inferences from the evidence, which would go the- j-nry unanswered, unless the presiding Judge should feel himself called upon to notice them. This would be objectionable. The proper rule is, that the party having a right to conclude opens the argument, the opposite party then has an opportunity to reply, and he, in his turn, may reply by way of conclusion.” It is manifest from this, that it is the object of the rules of practice, which the presiding Judge must enforce, to secure for both parties a fair and impartial trial. It follows, that if it appeared to the Judge, in the present case, that the courso pursued by the prisoner’s counsel, was calculated to deprive the solicitor of his just rights in the management of the cause, as we think it did, then the permission given them to recall Yaughn was properly withdrawn, and they cannot except to it as error.
 

 Our conclusion upon the whole case is, that there is no error assigned in the bill of exceptions, which entitles the prisoner to a
 
 mnwe de novo ¡
 
 and wo do not find any in the record which makes it our duty to arrest the judgment.
 

 This must be certified to the Superior Court of Chowan, to the end that the sentence of the law maybe pronounced upon the prisoner.
 

 Pee Cueiaji, Judgment affirmed.