JOHN SWILLEY v. THE STATE.

No. 3314. Decided November 25, 1914.

Rehearing overruled November 25, 1914.

**1.—Murder—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained the conviction under a proper charge of the court, there was no reversible error.

**2.—Same—Continuance—Want of Diligence.**

Where the application for continuance was a second application for the same witness and was wholly insufficient to show diligence, there was no error in overruling same. Davidson, Judge, dissenting.

**3.—Same—Continuance—Case Stated—Consent—Want of Diligence.**

Where, upon trial of murder, appellant's contention was that the diligence of the State to secure the absent witness was sufficient in law and inured to his benefit, in his motion for new trial, which the State contested,

and the record showed that the application was the second for the same wit-ness, and that the trial court was justified in his conclusion that the witness was absent with the consent of the defendant by reason of the conduct of his counsel, and also showed a want of diligence in procuring the attendance of the absent witness or his deposition, and it furthermore appeared that there was no reasonable expectation of procuring the absent testimony at the next term of the court, there was no error in overruling the application. Follow-ing Cocker v. State, 31 Texas, 498, and other cases. Davidson, Judge, dis-senting.

Appeal from the District Court of Jasper. . Tried below before the Hon. A. E. Davis.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Stevens & Stevens* and *Bisland, Adams & Bruce,* for appellant.—On question of continuance: Moore v. State, 33 S. W. Rep., 980; De Warren v. State, 29 Texas, 465; Holman v. State, 23 Texas Crim. App., 212; Roddy v. State, 16 id., 502; Dyer v. State, 47 Texas Crim. Rep., 253; Pearson v. State, 56 id., 607; Leonard v. State, 53 id., 187; Stegar v. State, 105 S. W. Rep., 789; Phillips v. State, 35 Texas Crim. Rep., 480; Mates v. State, 14 Texas Crim. App., 134.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, Judge.—This is the second appeal in this case. On this trial appellant was found guilty, and his punishment assessed at ten years confinement in the State penitentiary.

The only bills of exception in the record complain ·of the action of the court in overruling appellant's application for a continuance, which will hereinafter be discussed. The only other ground in the motion for a new trial alleges the insufficiency of the testimony to sustain the verdict. The evidence introduced in behalf of the State, if believed, fully supports the findings of the jury. The issues made by the testi-mony were fully and fairly submitted by the court in his charge, and submitted in a way not complained of by appellant. Appellant re-quested no special charges. So the only question to be decided is, did the court err in overruling the application for a continuance?

It appears from the record that this indictment was found by the grand jury of Orange County, and while the case was pending in that court a subpoena was issued by the State for a witness by the name of Albert Cram. This subpoena was returned, saying witness not found, as he was then in Morgan City, Louisiana. The venue of the case was changed to Jasper County, when a subpoena was again issued to Orange County for this witness, the return again stating him to be in Morgan City, Louisiana. The case was tried and resulted in a conviction, which judgment was by this court reversed, the opinion on the former appeal being reported in 73 Texas Crim. Rep., 619, 166 S. W. Rep., 733. By reference to that opinion, and to this record it is shown that appellant

then sought a continuance on account of the absence of this witness, Albert Cram. So the application we are now considering is on account of the absence of this same witness. What diligence does the record disclose that appellant used to secure the attendance of this witness? The only showing made, in so far as diligence on his part is concerned, is that after the term of court had begun at which his case was set for trial, he caused a subpoena to issue to Jefferson County for the witness. The motion does not show what officer this subpoena issued for the witness was placed in the hands of, or that it was ever placed in the hands of any officer in Jefferson County. The subpoena is not in the record, and if it was ever placed in the hands of any officer in Jefferson County, no return has ever been made thereon. The appellant does not now claim to know that the witness is in Jefferson County, or that he was in Jefferson County at the time he had the subpoena issued directed to such county. He does not claim in his application that anyone had so informed him, or that he had ever seen said witness in said county, but he does state in his second application that he has been informed that the witness is in the State of Louisiana. So, in so far as the efforts made by the defendant to secure the attendance of this witness are concerned, the diligence used is wholly insufficient in law on a second application for the same witness. For he does not claim to know where the witness is located, or where he has been located at any time since the last term of the court, nor what efforts, if any, he has made to learn the whereabouts of the witness, that he might be summoned, or if out of the State his depositions might be taken. In the case of Swofford v. State, 3 Texas Crim. App., 76, this court held: "In subsequent applications, provided for by article 2988 of Paschal's Digest, however, we are of opinion that the application is not a matter of right, save in those cases only where it is shown affirmatively that such process as the law has provided and afforded had been sued out, and not only sued out, but actually served and returned into court. In such case, we apprehend, a party, even on a second application, would rightfully be entitled to a continuance. But suppose he has promptly availed himself of the process which the law grants, but that the process has not been served and returned. In such a case it seems equally clear to us that he is not entitled to the continuance as a matter of right; it then becomes a discretionary question with the court. The court will then inquire whether or not the defendant's affidavit, 'that he has a reasonable expectation of procuring the testimony at the next term of the court' (Pasc. Dig., art. 2988), is founded in truth and reason as well as in fact."

If the appellant since the last term of court had not succeeded in locating this witness, what assurance could he give or did he offer to give the court that he would do so by the next term of the court? Under such circumstances we can not hold that the court erred in the premises in so far as the diligence used by the defendant to secure the attendance of this witness is concerned. However, the record discloses that the State was anxious also to secure the attendance of this wit-

ness; that the witness Cram had testified for the State at the examining trial and habeas corpus hearing held at Orange, and was present in court when the venue was changed to Jasper, Texas. One of the reasons this case was reversed on the former appeal was because the defendant, while a witness, was compelled to state and prove what Cram had testified to at the habeas corpus hearing, without showing that Cram was permanently beyond the jurisdiction of the court. The State had been seeking to secure the attendance of this witness, and had had process issued for him since the last term of the court, and the sheriff of Jefferson County had returned a subpoena showing that he had served the witness with process at Port Arthur, Texas, June 15—just ten days before the trial. On the day the case was called for trial, the witness not appearing, an attachment was issued for him, which was returned with the statement that Cram had gone to Louisiana. Appellant's contention is that this diligence used by the State should, and does in law, inure to his benefit, and in the motion for a new trial sets up these facts as a reason why a new trial should be granted on account of the absence of this witness. The State contested this motion and evidence was heard thereon. Mr. Adams, one of defendant's attorneys, was the first witness heard, and the State proved by him that he was informed that the State had secured this witness to be served at Port Arthur, Texas; that two days before the cause was set for trial, having business at Port Arthur, he went there, and being desirous of conferring with the witness as to his testimony, when he got to Port Arthur he paid John Griffith five dollars to locate for him the witness who had been served by the State as Albert Cram, and also informed Deputy Sheriff Schmizer, who had made the return on the subpoena, that he desired to see the witness. That about four o'clock on the evening of June 23 (the cause being set for June 25) Mr. Schmizer introduced him to the person he had served, and introduced him as Albert Cram; that John Griffith and J. F. Smith were present. Mr. Adams says he invited all the gentlemen to take a drink with him, and all did so except the deputy sheriff and the witness Cram, they remaining in front of the saloon. After those who desired had taken their drink, he, Adams, asked Griffith to tell Cram he desired to talk with him, and Griffith went and got Cram and brought him to him; that he then talked with the person who had been served with a subpoena some eight or ten minutes; that he claimed not to be Albert Cram, but said he was named Orrin Cram; that Albert was his brother and he did not know where he was. That witness then asked if he should attend court, and he told him if he was Albert Cram he should do so, but if in fact he was Orrin Cram he need not do so.

The deputy sheriff testified that he introduced the witness he had served with subpoena to appellant's counsel, and that this person was known as Albert Cram in Port Arthur. That after the witness Cram had talked with appellant's counsel he saw Griffith and appellant's attorney in conversation after Cram had walked away, and after Mr. Adams left, Griffith remarked to him, "I will bet that Cram does not

go to Jasper." And it appears that he did not go. Mr. Smith also testified that he was present when defendant's attorney was introduced to Cram, and that he took a drink with Mr. Adams and John Griffith, and as he walked away he saw Griffith go to Cram and tell him that Mr. Adams desired to see him, and Cram and Griffith went together to Adams; that some thirty minutes after this and after the parties had separated he again met Cram, and Cram had agreed to meet him at a certain time and place and go with him to Jasper. That this was the last he saw of him. The record further discloses that this witness Cram, whether he be Orrin or Albert, took the train for Louisiana instead of Jasper, Texas, after this conversation. If the person served was Orrin Cram, and not Albert Cram, and Albert Cram was not in fact found nor served with process as hereinbefore shown no sufficient diligence has been used by appellant to secure his attendence as a witness, this being the second application for a continuance on account of his absence. If the person served with process issued by the State was in fact Albert Cram, the court doubtless felt that but for the visit of appellant's counsel the witness would have been in attendance on court, and the witness was absent with at least the implied consent of counsel, and under such circumstances the court would not err in overruling the application for continuance, for on a second application the record must affirmatively show that the witness is not absent by consent. (Cocker v. State, 31 Texas, 498; Pullen v. State, 11 Texas Crim. App., 89; Sargent v. State, 35 Texas Crim. Rep., 325.)

But appellant insists in this court that as the court fined the witness Albert Cram $500 for failure to attend court in obedience to the service of the subpoena, this is a finding that it was in fact Albert Cram who was served by the process issued by the State. The evidence adduced on the motion for new trial shows that when the witnesses were called, the court asked those in attendance if they had seen Albert Cram, and appellant's counsel, Mr. Adams, answered that he had not. He explains this in his testimony, saying he made such answer at the instance of his co-counsel, as Cram had told him his name was Orrin, and he did not know where Albert was. He frankly admits now that perhaps he should have gone further and explained the matter fully to the court, instead of answering flatly "no." Anyway, it was at this time the court entered the fine against Albert Cram, and he had at that time heard no testimony that the person summoned was not in fact Albert Cram. Later, however, on the motion for a new trial he heard the testimony of Mr. Adams and the testimony of Mr. Schmizer and Mr. Smith, and a finding at that time that the person served was Orrin Cram would present no contradictory findings, and this criticism by appellant of the court's qualification to the bill of exception presents nothing meritorious. It was but natural and proper for the court to enter a fine against the witness when the case was called for trial, as the process showed the witness to have been served, and he did not attend court. This entry was made June 25.

The motion for a new trial on which hearing was had was not filed

until five days later—June 30th. The State's contest being also filed on June 30th. If on this hearing the evidence convinced him that Albert Cram had not been served, but Orrin Cram had been served by mistake for Albert, there would be no inconsistency presented in his action. Especially should not appellant's attorney complain of this finding. Albert Cram had testified at the examining trial and habeas corpus hearing. Doubtless the court thought under such circumstances that defendant's attorney would know the witness, and when he told the court that the man summoned at Port Arthur was not Albert Cram, the court should place reliance in such statement.

We are of the opinion the court did not err in overruling the motion for continuance, and refusing a new trial on account thereof in the light of the testimony heard on the motion for new trial.

The judgment is affirmed.

*'*ffirmed.*

DAVIDSON, JUDGE (dissenting).—Appellant was convicted of murder and given ten years in the penitentiary.

When the case was called for trial a second application for continuance was overruled. At the previous term the first application had been overruled, and on the trial appellant was convicted. On appeal that conviction was set aside and reversal occurred. The application was made on account of the absence of Albert Cram, who was alleged to reside in Jefferson County. Appellant issued process for him, which seems not to have been returned. The State issued process for the same witness. The return of the sheriff shows it was served upon Albert Cram. Albert Cram was a very material witness, and his testimony would flatly contradict the State's case on most material facts connected with the homicide. The diligence was sufficient for the reason it shows the witness was summoned in ample time to obtain his presence at the trial. If witness misled appellant as to what his testimony would be diligence is ample. Branch's Crim. Law, sec. 256; Richardson v. State, 57 Texas Crim. Rep., 285; Adams v. State, 10 Texas Crim. App., 677; Rankin v. State, 57 Texas Crim. Rep., 132. Attachment issued also for the witness when he failed to appear. The bill of exceptions shows after witness was served Mr. Adams, one of appellant's counsel, went to Port Arthur, in Jefferson County, where the witness was summoned and had a conversation with him. In this conversation the witness told Mr. Adams that his name was not Albert Cram but Orrin Cram; that he was a brother of Albert Cram, and he did not know the whereabouts of Albert, his brother. It is also shown that during the investigation of this continuance, from the standpoint of the motion for new trial, that while Mr. Adams was in Jefferson County he was introduced to a Mr. Cram as Albert Cram, and that he went to Port Arthur in part to see Cram to know what he would testify as to the facts of the case. When Cram told him his name was not Albert but that it was Orrin, he then asked Mr. Adams whether or not he should attend court at Jasper. Mr. Adams answered if he

was not Albert Cram he need not go, but if he was Albert Cram he should go. It is also shown that when the application was presented, the court asked the question generally if anybody had seen Albert Cram. Receiving no reply the court then turned to Mr. Adams and asked him if he had seen Mr. Albert Cram lately, and was informed by Mr. Adams that he had not, whereupon the court said from all these facts he would hold that the witness had never been served, but that a brother of Albert Cram, towit: Orrin Cram, had been served instead of Albert Cram; that after having notice from the officers at the last term of the District Court six months ago that Albert Cram was then in Morgan City, Louisiana, no attempt was made to take his depositions. The court was informed by Mr. Adams after this case was tried, when the defendant was given time in which to prepare his motion for a continuance, that in consultation he, Mr. Adams, asked the other attorneys what he must say should the court ask him if he had seen Albert Cram, and that they said to him, "Well, have you seen Albert Cram?" and was informed by Mr. Adams that he had not, and then they said, "Then tell the court you have not seen him," and that he did as they had agreed that they should. It is further shown that when the application for continuance was overruled the court entered a fine against Albert Cram and a judgment nisi ordering process to issue. The amount of the judgment nisi was $500. Now the court finds as follows: "From all the facts, the court holds that the witness Albert Cram was never served, but that a brother of Albert Cram, towit: Orrin Cram, was served as the witness Albert Cram; that after having notice from the officer, at the last term of the District Court six months ago, that Albert Cram was then in Morgan City, Louisiana, no attempt was made to take his depositions. The court was also informed by Mr. J. T. Adams after this case was tried, 'that when the defendant in this case was given time in which to prepare his motion for a continuance, that in consultation he, Mr. Adams, asked the other attorneys what he must say should the court ask him if he had seen Albert Cram, and that they said to him, "Well, have you seen Albert Cram?" and "I said no," and then they said, "Well, then tell the court you have not seen him," and "that he did as they had agreed that he should." ' " The witnesses for the State, Smith and Schmizer, testified when Mr. Adams came to Port Arthur he asked them to locate the witness Albert Cram so he could talk with him. They finally did so, and in the evening they introduced the man to him as Albert Cram with whom Adams had the conversation. In this conversation Adams was informed by Cram that his name was not Albert, but Orrin Cram. Cram asked Mr. Adams then if he should attend court. He said, "If you are not Albert Cram there is no necessity for your going," or "you need not go," or substantially this, but "If you are Albert Cram you had better attend court." He was a stranger to Adams; the first time they had ever seen each other. Now under this condition of the record the court finds that Albert Cram was not served, and yet enters a judgment nisi against him fining him $500 for non-attendance upon the court, and

yet all the process was served upon him as Albert Cram, and the officers indicate in their statements that he was Albert Cram. The court seems to find with Mr. Adams, that he was not Albert Cram, but Orrin Cram, and proceeds to fine Albert Cram $500 for non-attendance on the court for process served upon Orrin Cram, and for this reason he says the diligence is not sufficient. I can not agree with the trial judge. Appellant did not have to resort to depositions under the circumstances of this case. When the motion for new trial presented all these matters, the court should have granted a new trial. The witness was a most material witness under the showing made, and if his testimony is true, it went directly to the very substance of the State's case. If as the officers say this was Albert Cram and they served him a few days before court, the diligence was sufficient whether it was served for the defendant or the State. Diligence is not always the final test. Fair trial being guaranteed by the Constitution, it is far more important that material testimony be had. No accused citizen ought to be rendered infamous on a test of strictest technical diligence. Having been served for the State, defendant had a right to take advantage of such service. He himself had issued process, but for some unexplained reason it had not been returned by the officer. Subsequently that issued by the State was served and return made. Both parties believed he was Albert Cram, issued process for him, and the return shows it was Albert Cram. The officers believed he was Albert Cram, and their return on process as well as their testimony so indicates. The court did not find and would not have been justified in finding that Mr. Adams kept the witness away or was instrumental in keeping him away. The evidence shows to the contrary. Under the circumstances of this case I am of opinion the court erred, and the judgment should be reversed and remanded. I can not concur in this affirmance, and enter my dissent.